UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MARIO CONTRERAS,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case: 4:17-cv-04075-LLP<br><br>GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS ANSWER AND MOTION TO DISMISS |

This matter is before the Court upon its order dated June 26, 2017, directing the government to file its response to petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, and to some related discovery motions. CIV Doc. 27. The government respectfully submits this memorandum of law in support of its answer and motion to dismiss.[1] For the reasons that follow, the Court should also deny all of the many discovery motions that Contreras has filed.

## BACKGROUND

A federal grand jury indicted Mario Contreras in August 2012, charging him with second degree murder, voluntary manslaughter, assault resulting in

---

[1] Entries from the clerk's docket in the underlying criminal prosecution (1:12-cr-10047-LLP) will be cited as "CR Doc." followed by the docket number and page, if applicable. Citations to docket entries in this civil case will be cited as "CIV Doc." followed by the docket number and page, if applicable. The Trial Transcript in this matter will be cited as "TT" followed by the relevant page number.

serious bodily injury, and child abuse. CR. Doc. 2. The charges alleged that Contreras killed his young child, A.C., by beating her while she was in his care. *Id.*

Contreras proceeded to trial in July 2013. CR. Doc. Entry on July 30, 2013. His jury heard testimony from a variety of witnesses, including:

- FBI Agent Rob Mertz. Agent Mertz interviewed Contreras in February 2012 with his attorney present. TT 90-91. Contreras claimed that A.C. was sitting in a chair; he left the room, and he heard a thump. TT 94-95. He claimed he found her on the floor with her eyes rolling back into her head. TT 95.

- Dr. Arne Graff, a leading expert on child injuries. He had treated A.C. after her life flight to Fargo, North Dakota. He learned Contreras was claiming the child fell from a chair. He told Contreras the injuries were totally inconsistent with a fall, and Contreras did not respond. TT 240-244.

- Dr. Victor Froloff, St. Paul Coroner. Prior to even finishing the autopsy on the child, he contacted the FBI due to concerns the child had been beaten to death. He documented 18 subgaleal hemorrhages on multiple planes of her head, totally inconsistent with a one-time fall that would result in a discrete area of impact. TT 125-127, 137-138. Froloff opined the injuries occurred within 72 hours of the child dying (a perfect match to the time she was brought to the hospital), and that the cause of death was traumatic injury due to physical assault consistent with "fists, knuckles, or just punching." TT 139-140, 145-146, 184, 187-188.

- Dr. Kenneth Snell, clinical pathologist. He reviewed all the medical records, scans, photographs, autopsy report, and death certificate. TT 323. He testified that it is impossible that the multiple injuries on all sides of A.C.'s head would have been caused by a single fall. TT 331-334. He agreed that her cause of death was homicide. TT 342.

- Dr. Brad Randall, the defense expert witness hired by Contreras. He agreed with the factual determinations of Dr. Froloff, and did not dispute that A.C. had 18 hemorrhages around her head. TT 403.

> He agreed that such injuries were inconsistent with a single fall, and he agreed that the injuries were consistent with blows from knuckles. TT 413.

The jury also heard uncontroverted evidence that, when she died, A.C. was about to begin a Head Start program. A physical was required prior to enrolling, and the examining physician testified that A.C. was a healthy child without any issues as of two weeks before her death. TT 73-76.

The jury also learned facts about the morning of January 9, 2012, when the government alleged the injuries were inflicted on A.C. that led to her death. Contreras was caring for five children under age 11; he was running late for work, and he was in trouble with his supervisor for being late in the past. TT 93, 307-310. After A.C. was rendered unconscious, he drove her first to his uncle's house before bringing her to the hospital. TT 460. Neither Contreras nor his uncle called for emergency services. TT 460. Police were later called to investigate by the hospital. TT 81-82. When relatives arrived, at least one observed that Contreras appeared emotionless and evasive when doctors were asking what happened to the child. TT 267-268.

A.C. never regained consciousness, and the decision to terminate life support was made. She died about 5:00 p.m. on January 11, 2012. TT 244.

Contreras was found guilty of murder and assault resulting in serious bodily injury. His sentencing was delayed while he was evaluated for competency. His sentence of 360 months' imprisonment on each count, concurrent, was entered on November 25, 2014. Cr. Doc. 180.

Contreras filed a timely direct appeal. Among the issues he raised was whether the Court erred by denying a motion for judgment of acquittal. *See United States v. Contreras*, 816 F.3d 502 (8th Cir. 2016). This required the Eighth Circuit to review the trial evidence and determine whether the evidence was sufficient for conviction, "drawing all reasonable inferences from the evidence that support the jury's verdict." *Contreras*, 816 F.3d at 504 (quoting *United States v. Ramon-Rodriguez*, 492 F.3d 930 (8th Cir. 2007)). In particular, Contreras contended that "the government failed to prove *when* the injury occurred." *Contreras*, 816 F.3d at 509. The court concluded that, based on the testimony of several experts, the jury heard sufficient evidence that placed A.C. in his care when her head injuries were inflicted. *Id.*

His convictions and sentence were affirmed in all respects in the detailed published opinion issued on March 7, 2016. Contreras filed a petition for rehearing, which was denied on July 14, 2016. He filed the present motion on or about May 31, 2017.

After filing his initial motion under 28 U.S.C. § 2255, Contreras filed many additional documents labeled "complaint," "application," or "motion." At the time of the Order requiring a government response (June 26, 2017), he had filed approximately two dozen such documents.[2] The government intends this filing

---

[2] Since then, Contreras has filed over a dozen more. It appears that he has also filed additional documents labeled as motions to vacate under 28 U.S.C. § 2255. The government believes that, pursuant to Rule 4(b) of the Rules Re Section 2255 Proceedings, the Court should determine that Contreras is not entitled to relief on the multiple new filings, and dismiss them. If, however, the Court deems they require a response, the government seeks leave to do so within a reasonable amount of time to prepare an adequate response.

to be its response to those documents filed as of this Court's Order (docket numbers 1-26).

## THE § 2255 MOTION AND ADDITIONAL FILINGS

The document construed by the Court as a motion to vacate under 28 U.S.C. § 2255 takes the form of a letter written to the Federal Public Defender. Civ. Doc. 1. In it, Contreras contends that a "proper investigation" by his counsel "was never conducted." *Id.* In particular, he contends that an interview of Aaron M. Leventis, M.D., a "material witness and medical expert" should have been conducted. *Id.* He alleges that this doctor ordered a chest x-ray of his victim that would have constituted exculpatory evidence. *Id.*

An attachment to Civ. Doc. 1 is an explanation apparently written by Contreras explaining that he struck a witness, A.L., in an effort to defend A.L.'s mother. Cast most charitably, it appears Contreras has included this document in service of a theory of self-defense or defense-of-others that he thinks his counsel should have investigated better.

Most of the additional filings Contreras has made center around these claims that more should have been done to flesh out that (1) an unrelated heart defect killed his daughter, and (2) he was justified in beating A.L.

- Civ. Doc. 4 is a motion seeking compulsion of written materials from Dr. Leventis.

- Civ. Doc. 5 is another motion seeking compulsion of various medical files related to A.C., mostly related to alleged heart-related treatments and diagnoses.

- Civ. Doc. 7 seeks a declaration of mistrial because Contreras believes his beating of A.L. was justified.

- Civ. Doc. 9 seeks disclosure of A.C.'s heart-related medical records.

- Civ. Doc. 10 is a lengthy motion, again seeking compulsion of materials and testimony from various identified medical professionals, to discover evidence to support Contreras's new claim that an unrelated heart condition killed A.C.

- Civ. Doc. 11 asks to "expand the record" and allow additional discovery seeking to show that medical professionals killed A.C., not him.

- Civ. Doc. 13 seeks disclosure of materials related to Dr. Leventis.

- Civ. Doc. 14 is a lengthy document in which Contreras offers an "Official Written Complaint" alleging various medical professionals engaged in health care fraud and that they should have their licenses revoked.

- Civ. Doc. 16 contains subpoenas for Dr. Leventis and other medical professionals.

- Civ. Doc. 17 is labeled as a motion under 28 U.S.C. § 2241, but it appears to be another document urging that A.C. died not from his beating of her, but instead because of an unrelated heart condition.

- Civ. Doc. 18 seeks to expand the record to provide affidavits regarding a defense that Contreras acted to meet an emergency.

- Civ. Doc. 19 asks the Court to appoint counsel to assist Contreras in his pursuit of his new claims.

- Civ. Doc. 20 seeks disclosure of materials related to Dr. Leventis.

- Civ. Doc. 21 seeks disclosure of various medical files related to A.C., regarding her alleged heart-related treatments and diagnoses.

- Civ. Doc. 22 appears to be a duplicate (or near duplicate) of Civ. Doc. 21.

- Civ. Docs. 23, 24, and 25 are lengthy motions, again seeking materials and testimony from various identified medical professionals, to discover evidence to support Contreras's new claim that an unrelated heart condition killed A.C.

- Civ. Doc. 26 is labeled as a motion under 28 U.S.C. § 2242, and it is another document urging that A.C. died from an unrelated heart condition, and that he was justified in beating A.L.

Two other filings made by Contreras appear to fish for a different defense theory.

- Civ. Docs. 6 and 15 seek authentication identifying him on the audio recording of the interview conducted by Agent Mertz, apparently in service of an allegation that his recorded interview was faked. Relatedly, Civ. Docs. 8 and 12 ask the Court to allow his counsel to be present when procedures are undertaken to identify him in the FBI recordings.

## ARGUMENT AND AUTHORITIES

### A. APPLICABLE CASE LAW WHEN MAKING AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

Relief under 28 U.S.C. § 2255 is not appropriate for every alleged error in conviction and sentencing. *Meirovitz v. United States,* 688 F.3d 369, 370 (8th Cir. 2012). Rather, § 2255 relief is available where the court lacked jurisdiction to impose a sentence, the sentence was imposed in violation of the Constitution or laws of the United States, or the sentence exceeded the maximum sentence authorized by law. *Id.* Relief under § 2255 for errors of law is appropriate "only when 'the claimed error constitutes a fundamental defect which inherently

results in a complete miscarriage of justice.'" *Id.* (*quoting Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (internal quotes omitted)).

The benchmark in evaluating ineffective assistance of counsel claims is "'whether counsel's performance so undermined the proper functioning of the adversarial process'" that the outcome of the proceeding . . . cannot be considered as a just result. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (*quoting Strickland v. Washington,* 466 U.S. 668, 686 (1984)). To establish ineffective assistance of counsel, a defendant must show: (1) his counsel's performance was deficient and (2) the deficient performance resulted in prejudice to the defendant. *Premo v. Moore,* 562 U.S. 115, 131 S. Ct. 733, 739 (2011); *Strickland,* 466 U.S. at 686. Both prongs of the *Strickland* test must be satisfied to prevail on an ineffective assistance of counsel claim. *Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006).

The test used to establish ineffective assistance of counsel was set forth by the Supreme Court in *Strickland.* First, to demonstrate deficient performance, a defendant must show counsel's errors were so "serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The "reasonableness" of counsel's conduct is "viewed as of the time of counsel's conduct." *Auman v. United States,* 67 F.3d 157, 162 (8th Cir. 1995). A defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. A

court must then determine whether, under the totality of the circumstances, the acts or omissions fell outside the wide range of competent assistance, "not whether [counsel's representation] deviated from the best practices or most common custom." *Id.*; *Premo,* 131 S. Ct. at 740. In making this determination, there is a strong presumption counsel provided adequate assistance. *Strickland,* 466 U.S. at 690.

Once a defendant has shown deficient performance, he must then affirmatively show prejudice. *Strickland,* 466 U.S. at 687, 693. A defendant must show more than that the error complained of had some effect on the outcome. *Id.* at 693. He must show there is a reasonable probability the results of the proceedings would have been different but for counsel's deficient performance, that is, "a probability sufficient to undermine the confidence in the outcome." *Id.* at 694; *Cullen,* 131 S. Ct. at 1403. A "reasonable probability" requires a "substantial" likelihood the result would have been different. *Id.*

In considering whether trial counsel was ineffective, the prejudice analysis "may replace the deficiency inquiry altogether if the lack of prejudice is apparent." *O'Rourke v. Endell,* 153 F.3d 560, 570 (8th Cir. 1998) (*citing Strickland,* 466 U.S. at 687). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 696. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at

696. To establish prejudice, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *O'Rourke,* 153 F.3d at 570 (*quoting Strickland,* 466 U.S. at 694).

Satisfying the two-prong standard for ineffective assistance of counsel is not an easy task. *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010). The burden of establishing ineffective assistance of counsel is on Contreras. *United States v. Cronic,* 466 U.S. 648, 658 (1984); *United States v. White,* 341 F.3d 673, 678 (8th Cir. 2003).

While an evidentiary hearing may be necessary on a § 2255 motion if there are factual issues to be resolved, "files and records of the case may be sufficient alone to dispose of the motion where they 'conclusively show that the prisoner is entitled to no relief.'" *United States v. Goodman,* 590 F.2d 705, 710 (8th Cir. 1979) (citations and omitted). *See also Hodges v. United States,* 368 U.S. 139, 140 (1961). The standard in the Eighth Circuit for dismissal without a hearing is as follows:

> A § 2255 motion may be dismissed without a hearing if (1) movant's allegations, accepted as true, would not entitle him to relief, or (2) [the] allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.

*Winters v. United States,* 716 F.3d 1098, 1103 (8th Cir. 2013).

Contreras has failed to state a credible claim of ineffective assistance of counsel. Based upon the record, no hearing is required to dismiss this petition.

### B. CONTRERAS CANNOT MEET HIS BURDENS.

"In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner." *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969). Although a pro se litigant like Contreras is entitled to liberal construction of his pleadings, even a pro se movant must identify facts that support his claims of error. *See Saunders v. United States*, 236 F.3d 950, 953 (8th Cir. 2001); *Blackledge v. Allison*, 431 U.S. 63, 75-76 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985). Moreover, claims must go beyond mere allegations and must not be so incredulous as to be unbelievable. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74; *see also United States v. Bryson*, 268 F.3d 560, 562 (8th Cir. 2001); *Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983).

Even cast in a light most favorable to Contreras, his allegation that A.C. died from an unrelated ailment is a speculative "actual innocence" possibility, offered now for the first time.[3] A movant trying to establish "actual innocence" must offer reliable evidence, such as "exculpatory scientific evidence,

---

[3] A line of cases in the Eighth Circuit hold that "the actual-innocence exception does not apply to noncapital sentences." *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001) (citing *Embrey v. Hershberger*, 131 F.3d 739, 740-41 (8th Cir. 1997) (en banc); *see also Sun Bear v. United States*, 644 F.3d 700, 706 (8th Cir. 2011); *but see Dretke v. Haley*, 541 U.S. 386 (2004) (declining to answer the question, but noting that noncapital cases may present "equally difficult questions regarding the scope of the actual innocence exception").

trustworthy eyewitness accounts, or critical physical evidence." *Bannister v. Delo*, 11 F.3d 610, 615 (8th Cir. 1996) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Contreras's burden is to establish that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327-28. Determining whether no reasonable juror would have found him guilty "turns upon an examination of the whole record to ascertain what inferences are reasonable in light of the evidence presented." *Hohn v. United States*, 193 F.3d 921, 924 (8th Cir. 1999).

Contreras cannot meet that burden. He does not dispute that A.C. died after enduring all of the traumatic injuries described by the various experts who testified at trial. He instead speculates that those injuries did not result in her death, but that a pre-existing heart defect caused her death. Those "are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Contreras brought A.C. to the emergency room unconscious, claiming that she had a head injury she received from a fall. Contreras's own expert, Dr. Randall, testified that he reviewed all of A.C.'s health records from her two years of life. TT 370. He agreed "by and large" with all of the other experts that A.C. died from traumatic brain injury that resulted in approximately 18 identified hemorrhages in all different planes of her head. TT 371, 403, 412. He also agreed that the injuries were consistent with A.C. having been beaten. TT 403, 413. Nowhere did Dr. Randall, after reviewing all her medical records, opine that A.C. might have died from an unrelated heart condition.

Dr. Randall's testimony was largely in sync with all the other testimony at trial. Dr. Froloff, for instance, explained in graphic detail how his autopsy showed her death was caused by traumatic brain injury resulting from a physical assault. TT 179-184. When asked if there was any question in his mind, he responded, "I don't have a question in my mind. I came to that opinion. I expressed my opinion. That's all." TT 184.

Moreover, Contreras cannot carry his burden of showing that "'counsel's performance so undermined the proper functioning of the adversarial process'" that the outcome of the proceeding . . . cannot be considered as a just result. *Cullen*, 131 S. Ct. at 1403 (*quoting Strickland*, 466 U.S. at 686). The general notion that A.C.'s death might have been caused by something other than Contreras beating her was offered extensively to the jury. Through Dr. Randall, defense counsel offered various theories to the jury regarding how her extensive head injuries might have pre-dated the morning she was rushed to the hospital or might have been caused by an accidental fall. TT 378-423. Contreras's new claim is that counsel should have added one more speculative causation theory into the mix. Thus, he has also not met his burden to show that, but for counsel's alleged deficiency, there is a reasonable probability the results of the proceedings would have been different. *Cullen,* 131 S. Ct. at 1403.

His claims about his counsel's handling of the evidence regarding prior assaults of A.L. should be easily dispatched. A.L. was a witness the government attempted to call in its case in chief. Defense counsel objected, and a hearing was held outside the presence of the jury. TT 272-286. The Court agreed with

defense counsel, and he was not allowed to testify, although the Court withheld ruling on whether A.L. might be allowed to be called as a rebuttal witness. TT 286. The government did not call A.L. as a rebuttal witness. Thus, counsel successfully kept the issue of Contreras's prior assaults of A.L. away from the jury, and there was no prejudice to Contreras regarding such information.

Finally, Contreras has hinted in his various discovery motions that he now believes the FBI faked or lied about his interview with Agent Mertz. He has not raised an actual claim about this. If the Court decides to construe his various filings as an actual claim, however, "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 71. He has offered nothing to support this allegation, and it should be dismissed.

## DISCOVERY MOTIONS

The Court should deny all of the many discovery motions Contreras has filed. "'A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'" *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2003) (quoting *Bracy v. Gramely*, 520 U.S. 899, 904 (1997)). The rules governing proceedings under 28 U.S.C. § 2255, at Rule 6(a), provide that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." To show "good cause," under that rule, however, a movant must provide the Court with "specific allegations [that] show reason to believe that the petitioner may, if the facts are

fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-909. Put another way, discovery is not allowable unless the Court determines it is necessary to "a pending, nonfrivolous case." *Chapman v. United States*, 55 F.3d 390, 390-391 (8th Cir. 1995); *see also Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) (holding discovery should not be allowed for a movant's fishing expedition or for mere speculation). Mere speculation, like the claims Contreras has made, does not establish good cause for a discovery request. *Strickler v. Greene*, 527 U.S. 263 286 (1999).

## CONCLUSION

Based upon the foregoing, the § 2255 petition should be dismissed, and an evidentiary hearing is not required. *See United States v. Goodman,* 590 F.2d 705, 710 (8th Cir. 1979) ("files and records of the case may be sufficient alone to dispose of the motion where they 'conclusively show that the prisoner is entitled to no relief.'") *cert. denied,* 440 U.S. 985 (1979).

Date: July 26, 2017.

RANDOLPH J. SEILER
United States Attorney

*/s/ Kevin Koliner*
Kevin Koliner
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
Telephone: (605)330-4400
E-Mail: Kevin.Koliner@usdoj.gov

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on July 26, 2017, a true and correct copy of the foregoing was served upon the following person, by placing the same in US Mail, postage prepaid, addressed as follows:

Mario M. Contreras  
12146-273  
United States Penitentiary  
PO Box 1000  
Oxford, WI 53952

                                     /s/ *Kevin Koliner*  
                                     KEVIN KOLINER  
                                     Assistant United States Attorney