UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MARIO M. CONTRERAS,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:17-CV-04075-LLP<br><br>MEMORANDUM OPINION AND ORDER |

Pending before the Court is Movant, Mario Contreras's ("Contreras") "Response to the Government" in regard to his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Civ. Doc. 208.) The government filed a Reply asserting that Contreras's Response raises three new claims that are untimely and that do not relate back to his Amended § 2255 Petition. (Doc. 210 at 1.) Contreras responded by explaining why he believes the three claims relate back to his Amended Petition. (Doc. 211.) For the following reasons, the Ramsey County Medical Examiner's Office claim relates back, but the two additional claims raised in Contreras's Response to the Government do not relate back.

## BACKGROUND

Contreras was convicted by a jury of murder and assault resulting in serious bodily injury. The victim was his young daughter, A.C. He was sentenced to 360 months' imprisonment on each count, concurrent. (CR 12-10047, Doc. 180.) On direct appeal, the Eighth Circuit affirmed his conviction and sentence. *See United States v. Contreras*, 816 F.3d 502 (8th Cir. 2016). His petition for rehearing was denied on July 14, 2016.

On May 31, 2017, Contreras filed a pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Civ. Doc. 1). He filed another pro se § 2255 motion on June 30, 2017. (Civ. Doc. 29.) The government filed its first motion to dismiss Contreras's § 2255 on July 26, 2017. (Civ. Doc. 48.) Contreras

has filed over eighty pro se motions during the course of his § 2255 proceedings. Though Contreras raised a myriad of issues in his numerous pro se filings, the gist of his ineffective assistance of counsel claims appeared to be his claim that A.C. died from a pre-existing heart defect, and that his trial lawyer should have obtained the medical records related to A.C.'s heart condition. That became clearer when his court-appointed lawyer filed an Amended Petition to Vacate, Set Aside or Correct Sentence Under § 2255 on April 24, 2020. (Civ. Doc. 135.) The Amended Petition asserts the following claims of ineffective assistance of trial counsel:

> • failure to identify medical evidence that supported the alternative theory of causation relating to a heart defect;
>
> • failure to interview and document testimony from physician John Levintis, who - according to Contreras - would have testified to a latent heart issue that required consultation of a cardiologist and affirmed that Dr. Levintis had made a referral for a consultation in November 2011; and
>
> • failure to invoke Rule 16 and Brady to compel the Government to turn over the exculpatory medical evidence relating to Cook Contreras's medical condition.

(Civ. Doc. 135, p. 5.) The Amended Petition also includes a claim about the Ramsey County Medical Examiner's Office where A.C.'s autopsy was performed: "That Mr. Contreras was denied effective assistance of counsel in that counsel failed to question the coroner from the Ramsey County Coroner's Office about events or problems that, according to Mr. Contreras, cast doubt on the impartiality and professional competence of the work performed in that office." (Doc. 135 at 3.) Finally, Contreras asserted a claim of actual innocence in his Amended Petition. (*Id.* at 6.)

The reasons for the delay in resolving Contreras's § 2255 motion have been set forth in considerable detail by this Court. (Civ. Docs. 134, 156, 174, 184 and 201.) The Court won't repeat all of the circumstances in this Memorandum Opinion, but a long delay occurred while attempting to obtain a signed attorney-client waiver form from Contreras so that his trial attorney could respond to the ineffective assistance of counsel claims. On May 6, 2021, the Court issued an Order dismissing Contreras's ineffective assistance of counsel claims for want of prosecution due to

2

his failure to comply with the Orders directing him to sign and file the form waiving the attorney-client privilege. (Civ. Doc. 184.)

After the ineffective assistance of counsel claims were dismissed, the only remaining claim was that Contreras is actually innocent. On June 7, 2021, the government filed a response requesting dismissal of Contreras's claim that he is actually innocent of the crimes of conviction. (Civ. Doc. 187.)

On July 6, 2021, a new lawyer filed a Notice of Appearance for Contreras. (Civ. Doc. 188.) On July 15, 2021, Contreras's new lawyer filed a motion asking the Court to reconsider its dismissal of the ineffective assistance of counsel claims. (Civ. Doc. 191.) According to his lawyer, Contreras wrote her about why he did not sign the waiver form and said, among other things, that he "was fearful of testifying against Iranians" and "other non-relevant issues." (*Id.*) Contreras's new lawyer thought Contreras might be willing to waive his attorney-client privilege if she had a chance to meet with him and explain why it was needed. (*Id.*) After further briefing and receipt of a signed waiver of Contreras's attorney-client privilege, the Court held that Contreras could proceed with his ineffective assistance of counsel claims "set forth in his Amended Petition." (Civ. Doc. 201.)

The government was directed to send the Amended Petition and the signed attorney-client waiver form to trial counsel. (*Id.*) Trial counsel was directed to provide and file an affidavit responding to the allegations in the Amended Petition, and the government was to file a response to Contreras's claims. (*Id.*) Contreras could file a brief within twenty days after receipt of the government's response. (*Id.*)

Trial counsel's affidavit was filed on November 22, 2021. (Civ. Doc. 206.) It was counsel's "understanding that Mr. Contreras's claims for ineffective assistance of counsel revolve around an alleged heart condition that would have supported an alternative causation theory." (*Id.*, ¶ 3.) Counsel explained the work he did to uncover possible causes of A.C.'s death, and how Contreras's medical expert reviewed A.C.'s medical records and autopsy photographs and identified no underlying heart condition. (*Id.*, ¶ 6.) Had Contreras mentioned the possibility of a heart defect, counsel would have taken all lawful and ethically permissible steps to obtain it. (*Id.*, ¶11.)

The government filed its response on December 22, 2021. (Civ. Doc. 207.) The government argued that neither Contreras nor anything in the medical records alerted Contreras's trial lawyer that A.C. died from a pre-existing heart condition. Rather, all of the medical evidence tied A.C.'s death to head injuries. According to the government, trial counsel was not ineffective, and Contreras did not suffer any prejudice.

On January 10, 2022, Contreras filed a pleading entitled "Defendant's Response to the Government," which the Court considers a reply brief in support of his Amended § 2255 motion. (Civ. Doc. 208.) The claims of ineffective assistance of counsel addressed in the reply brief are not limited to the claim that a heart condition caused A.C.s death. Rather, Contreras states the claims in his reply brief as follows:

a. His attorney failed to invoke Rule 16 and Brady to compel the Government to turn over exculpatory evidence. Per the Government's Motion in Limine, Doc # 31, the Government has in its possession "tribal records" and other documents concerning the full-time caregivers of AC. The Government filed a Motion to prohibit introduction of these documents into evidence. Doc. 31 page 4.
Contreras claims that he is actually innocent and such failure by trial counsel to investigate tribal/state records, subpoena the same, and respond to the Government's Motion, was prejudicial to his case and were it not for counsel's error, the result would be different.

b. His attorney failed give proper Notice of a pre-existing condition to the Government under Rule 16(b)(1)(c), and, as a result, the Court ruled that the defense expert could not testify to a pre-existing condition that could have led to the child's death. Contreras argues he was prejudiced by the same, and if the evidence had been admitted, the result would have been different. Additionally, the defense failed to call an expert witness who could give favorable testimony that exculpates the defendant.

c. His trial attorney failed to investigate the Ramsey County Medical Examiner's office for allegations of dishonesty and autopsies deemed incorrect by other doctors. A random and simple internet search of articles published could have led the defense to numerous news articles about the chief medical examiner, giving false and incorrect testify [sic] at a Minnesota murder trial. Contreras argues he was prejudiced by this mistake and that but for the error, there is reasonable probability that the result would have been different.

    d. Finally, Contreras asserts the child had a heart problem and his trial attorney failed to secure medical evidence of the same, which prejudiced him.

(Civ. Doc. 208, pp. 1-2.)

    Most of the discussion in Contreras's reply brief is devoted to addressing the first three claims - - that trial counsel should have investigated A.C.'s mother and stepfather's criminal histories, that counsel failed to follow proper procedures in order to introduce evidence that A.C. had a medical condition called hydrocephalus, and that he failed to investigate the Ramsey County Medical Examiner's office. (Civ. Doc. 208, pp. 2-6.) A.C.'s alleged heart condition is addressed in only one paragraph of the reply brief and in an Affidavit of Mario Contreras attached as Exhibit F to the brief.

    The government replied with a brief arguing that the first three claims of ineffective assistance of counsel raised in Contreras's reply brief are new, do not "relate back" and, consequently, are time-barred. (Civ. Doc. 210.) Counsel for Contreras responded with a brief explaining why she believes the claims relate back to the Amended Petition and thus should not be barred as untimely. (Civ. Doc. 211.)

**DISCUSSION**

    Section 2255 proceedings are civil in nature and, therefore, are governed by the Federal Rules of Civil Procedure, *see, e.g., Mandacina v. United States*, 328 F.3d 995, 1000 & n. 3 (8th Cir. 2003), including Rule 15 regarding amendments. Contreras's two pro se § 2255 motions were timely filed in 2017, but the time for Contreras to amend his § 2255 motion expired years ago and any attempted amendment now is untimely. Fed.R.Civ.P. 15(a)(1) ("A party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (c), or (f), whichever is earlier.").

    On April 23, 2020, Contreras obtained leave of court to file an Amended §2255 Petition after the expiration of his time to amend as a matter of course. *See* Fed.R.Civ.P. 15(a)(2) (if not filed as a matter of course within the meaning of Rule 15(a)(1), "a party may amend its pleadings only with the opposing party's written

consent or the court's leave"). The Amended Petition was filed on April 24, 2020. (Civ. Doc. 135.)

The Eighth Circuit has recognized that amendments pursuant to Rules 15(a) or 15(b) in § 2255 cases, offered after the expiration of the § 2255 statute of limitations, are subject to the "relation back" requirements of Rule 15(c). The Eighth Circuit has explained the requirements for "relation back," as follows:

> Claims made in an amended motion relate back to the original motion when the amendment asserts a claim that arose out of the same "conduct, transaction, or occurrence set out . . . in the original" motion. Fed.R.Civ.P. 15(c)(1)(B). To arise out of the same conduct, transaction, or occurrence, the claims must be "tied to a common core of operative facts." *Mayle v. Felix,* 545 U.S. 644, 664, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) (applying Rule 15(c) to a 28 U.S.C. § 2254 petition). An amended motion may raise new legal theories only if the new claims relate back to the original motion by "aris[ing] out of the same set of facts as [the] original claims." *Mandacina,* 328 F.3d at 1000. The facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim. *See [United States v.] Hernandez,* 436 F.3d [851,] 858 [(8th Cir. 2006)], (explaining the rationale for Rule 15(c)). Thus, it is not enough that both an original motion and an amended motion allege ineffective assistance of counsel during a trial. *See United States v. Ciampi,* 419 F.3d 20, 24 (1st Cir. 2005) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."), *cert. denied,* 547 U.S. 1217, 126 S.Ct. 2906, 165 L.Ed.2d 936 (2006). The allegations of ineffective assistance "must be of the same 'time and type' as those in the original motion, such that they arise from the same core set of operative facts." *Hernandez,* 436 F.3d at 857 (quoting *Mayle,* 545 U.S. at 650, 657, 660, 125 S.Ct. 2562, 162 L.Ed.2d 582 and holding that ineffective assistance claim alleging that counsel inadequately cross-examined two witnesses did not relate back to a claim for ineffective assistance related to counsel's failure to object to the admission of evidence lacking a proper foundation); *see also Mandacina,* 328 F.3d at 1002 (concluding that counsel's alleged failure to investigate the police report of an interview naming potential suspects was not a similar type of error as allegedly failing to discover exculpatory footprints during counsel's investigation of the case); *United States v. Craycraft,* 167 F.3d 451, 457 (8th Cir. 1999) (failure to file an appeal is not the same type of error as failure to seek a downward departure or challenge the drug type at sentencing).

*Dodd v. United States,* 614 F.3d 512, 515 (8th Cir. 2010). The petitioner carries the burden "to satisfy a relation back analysis" under Rule 15(c). *Mandacina,* 328 F.3d at 999.

The government asserts that the first three ineffective assistance of counsel claims in Contreras's reply brief do not "relate back" and are time barred. The Court will consider each of the challenged claims in turn.

### A. Brady Claim

The "Brady Claim" is based on allegations that trial counsel ineffectively handled evidence concerning conduct of A.C.'s full-time caregivers. A.C.'s mother, Shannon Sine ("Shannon") had custody of A.C. Shannon was married to Samuel Sine ("Samuel"). In his reply brief, Contreras references the government's Motions in Limine that were filed in the criminal case on April 3, 2013. Specifically, the government's motion in limine number 8 provided:

> **References to prior arrests, convictions or problems relating to victim child's mother (Shannon Sine) and/or her husband (Samuel Sine).**
> The USA will assert at trial that the two-year old child victim died as a result of an assault perpetrated by the defendant. The doctors will testify that the child's injuries were "acute," or very recent (within 24 hours) to her arrival at the hospital. At the hospital, defendant told police and hospital personnel that the child died from the fall from a chair (barely two feet tall) at his house. He maintained the same thing to the FBI. Another doctor will testify that the child was examined two weeks prior to her death as a prelude to beginning classes at Head Start and found nothing wrong with the child.
> Therefore the only real issue in this case is what caused the child's injuries which the experts agree occurred within the previous 24 hours of being brought to the hospital (when the child was in Defendant's custody). The USA therefore moves that there be no mention, question or otherwise regarding any prior arrest, conviction, or police report regarding the child's mother or her husband. The USA received from Defendant's previous attorney copies of some tribal records which show a DWI conviction for the victims's mother several months before the victim died as well as some allegations of child welfare made by defendant's family. Also, that same discovery discussed some domestic disputes between the child's mother and those of her current husband. The USA moves that there be no mention of ANY prior arrest, conviction, police report, or otherwise involving the victim's mother or her husband. Such information has nothing to do with the case and would be presented by the defense only to "dirty up" the child's mother or her boyfriend, and distract the jury from the real issues in the case.

(Cr. Doc. 31, p. 4.) Contreras claims that trial counsel's failure to investigate the records of prior arrests, convictions or problems relating to Shannon and Samuel, to subpoena the records, and to respond to the government's motion in limine was prejudicial. While the merits of the "Brady Claim" are questionable based on the

proceedings in the criminal trial, that is not the issue to be decided at this time.[1]

In arguing that the Brady Claim relates back to the Amended § 2255 Petition, Contreras points out that a reference to "Brady" was made in the Amended Petition. But that reference to Brady did not even hint at the present claim. The reference to Brady in the Amended Petition appears to relate to medical records from Indian Health Services ("IHS") in Sisseton, South Dakota. According to Contreras, Dr. John Leventis examined A.C. at IHS in November 2011, and he purportedly recommended A.C. be taken to a cardiologist or to a heart specialist. (Civ. Doc. 135, p. 2.) These allegations in the Amended Petition did not put the government on notice that Contreras was claiming trial counsel failed to obtain and introduce records of any prior arrest, conviction, or police report regarding Shannon or Samuel Sine. There are no comparable allegations in the Amended Petition and no factual allegations identifying a common core of operative facts. *Dodd*, 614 F.3d at 515. The Brady allegation in Contreras's reply brief alleges circumstances and theories that are different in "time and type" than the Brady-related allegation in the Amended Petition. *Id.* This claim does not relate back and is time-barred from consideration on the merits.

### B. Ramsey County Medical Examiner's Office Claim

Dr. Victor Froloff is the assistant medical examiner at the Ramsey County Medical Examiner's Office who performed A.C.'s autopsy. He testified at Contreras's trial that A.C.'s eighteen subgaleal hemorrhages, which were on multiple planes of her head, were inconsistent with a single fall. (Trial Transcript ("TT") in CR 12-10047, Doc. 158, pp. 150-51.) Dr. Froloff stated that the hemorrhages were caused by "by a fist . . . [or] . . . by just punching," TT 139, and that A.C.'s cause of death

---

[1] The government's April 3, 2013 motion in limine states that it received "from Defendant's previous attorney" copies of the records regarding Shannon and Samuel Sine. On July 29, 2013, Contreras's trial lawyer moved for service of subpoenas to obtain photographs of the Sines's home, all law enforcement reports and other information regarding the Sines. (Cr. Doc. 94.) The motion was granted. (Cr. Doc. 95.) The subpoenas were issued. (Cr. Doc. 96.) During the hearing on motions in limine, the parties addressed the government's motion to exclude the evidence obtained by Contreras's lawyer. (TT 17-20.) Contreras's lawyer argued that the evidence he had obtained was relevant and admissible. The Court did not allow trial counsel to present the evidence regarding Shannon or Samuel, but counsel was allowed to present testimony that A.C. would come from the Sines's house into Contreras's care with unexplained bruises on her head and legs. (TT 479-92.)

8

was "traumatic brain injury due to physical assault." TT 184. Further, Dr. Froloff testified that A.C.'s injuries occurred within about seventy-two hours of the time of her death, placing A.C. in Contreras's care at the time she received the head injuries. TT 142.

In his reply brief, Contreras asserts that Dr. Froloff should have been questioned about the professional integrity of the Ramsey County Medical Examiner's Office. (Civ. Doc. 211, p. 4.) Contreras submitted articles criticizing some of the work and trial testimony of the Chief Medical Examiner in Ramsey County, Dr. Michael McGee. (Docs. 208-4 and 208-5.)

There is an allegation in the Amended § 2255 Petition which states that trial counsel was ineffective for failing "to question the coroner from the Ramsey County Coroner's Office about events or problems that, according to Mr. Contreras, cast doubt on the impartiality and professional competence of the work performed in that office." (Doc. 135, p. 3.) This allegation was sufficient to put the government on notice that Contreras was claiming ineffective assistance of counsel in relation to questions about the professional integrity of the Ramsey County Medical Examiner's Office, a claim that is similar in both "time and type" as that described in Contreras's reply brief. *Dodd*, 614 F.3d at 515. This claim does "relate back," and it will be considered on the merits.

### C. Claim Related to Expert Witness for Defense

This claim relates to Contreras's expert witness at trial, Dr. Brad Randall. Contreras claims that trial counsel was ineffective for failing to give the government notice of Dr. Randall's opinion that hydrocephalus could have been a potential cause of the brain injury suffered by A.C. (TT 384-396.) That opinion was not disclosed in Dr. Randall's expert report, and he was not allowed to testify about this theory at trial. (*Id.*) Contreras also claims that trial counsel should have hired an expert who would have assisted in his defense instead of helping the government prove their case.[2]

---

[2] Dr. Randall predominantly agreed with the facts found in Dr. Froloff's autopsy report. TT 371. He testified, "I don't believe a single fall can explain everything, all the injuries that were found at the autopsy." TT 378-79. Dr. Randall agreed, "if the child would have fallen from a chair of two feet in height, . . . that would not cause [eighteen] subgaleal hemorrhages.'" TT

Contreras argues that this claim relates back to his Amended § 2255 Petition based on this allegation in the Petition:

> That Mr. Contreras was denied effective assistance of counsel in that his trial counsel failed to retain and hire an expert in cardiology and forensic examination who was capable of discerning evidentiary support for heart failure/heart defect as a cause of death in the medical records that were actually produced by the Government.

(Civ. Doc. 135, p. 3.)

The main problem with Contreras's argument is that the Amended Petition does not even mention Dr. Randall, his trial testimony, or hydrocephalus. Alleging ineffective assistance for failing to hire a cardiology expert does not put the government on notice of the new claims involving Dr. Randall. This is not the time to add a factually distinct claim unrelated to trial counsel's failure to hire a cardiology expert. This claim does not "relate back," and it will not be considered on the merits.

Judge Kelly in a concurring opinion in *Taylor v. United States*, 792 F.3d 865, 871–72 (8th Cir. 2015), stated:

> I find it important to reiterate that district courts maintain the ability under Rule 52 to address sua sponte an issue not raised by the petitioner. If it becomes apparent to the district court during the course of a habeas proceeding that an error has occurred—an error not previously raised by the petitioner—and if that error is both plain and affects a substantial right, the court has the authority to notice it and, if warranted, to provide relief.

In the many filings in this case, the Court has not seen evidence of error not previously raised which is both plain and affects a substantial right.

For all of these reasons,

**IT IS ORDERED:**

1. Within 20 days after receipt of this Order, the government shall file a supplemental brief addressing the Ramsey County Medical Examiner's Office claim.

---

403. Further, Dr. Randall agreed that "three or four blows with the knuckles to the head or four or five blows could cause these [eighteen] subgaleal contusions." TT 413.

2. Contreras shall file a responsive brief within 20 days after receipt of the government's supplemental brief.

3. The government may file a reply brief within 10 days after receipt of Contreras's response.

Dated this 23rd day of February, 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK